FILED
2025 Dec-16  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**UTHMAN IDREES ALI CLARK,**

    **Plaintiff,**

**v.**                             **Case No. 5:25-cv-1188-HDM**

**TRANS UNION, LLC,**

    **Defendant.**

### MEMORANDUM OPINION

Plaintiff Uthman Idrees Ali Clark, proceeding *pro se*, alleges that Defendant Trans Union, LLC,[1] violated the Fair Credit Reporting Act by including a nonexistent debt on his credit report and then, upon his complaint, failing to conduct a reasonable investigation. (Doc. 1). Before the court is Trans Union's Motion to Dismiss, in which it argues that Clark has failed to state a claim upon which relief can be granted. (Doc. 6). Clark opposed dismissal, (doc. 11), to which Trans Union replied in turn, (Doc. 12). Having considered the briefing and applicable law, and as set out in greater length below, the court finds that Trans Union's Motion to Dismiss is due to be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Plaintiff Clark refers to Defendant as "TransUnion," (doc. 1, ¶ 1), while Defendant styles itself as "Trans Union," (*See generally* Doc. 6). This Memorandum Opinion will adopt the latter in deference to Defendant's own spelling.

## FACTUAL BACKGROUND

To supplement his income as a government employee, Plaintiff Uthman Idrees Ali Clark routinely invests in real estate. (Doc. 1, ¶ 7). On or about May 29, 2025, Clark attempted to refinance one of his investment properties, but the prospective lender denied his application after receiving a report on his credit prepared by Defendant Trans Union, LLC. *Id.*, ¶ 8. Clark subsequently received an email from Credit Karma, a third-party credit monitoring service, informing him that the credit report issued by Trans Union to the would-be lender included a collection account from an entity identified as "Credit Collection Services." *Id.* Even though Clark has never conducted any business with a company by that name and has no record or knowledge of its existence, the credit report showed that he owed $123 to Credit Collection Services. *Id.*, ¶¶ 8–9.

Clark contacted Trans Union to dispute the inclusion of Credit Collection Services on his credit report. *Id.*, ¶ 11. He also requested an Automated Consumer Dispute Verification record and details of the procedures by which Trans Union verified the report. *Id.* Trans Union informed Clark that the information in the report had been verified, but it provided no substantive evidence of its methods and did not amend the report. *Id.* After Credit Collection Services was included in Clark's credit report, his credit score declined, he suffered emotional distress, anxiety, embarrassment, and had to work extra hours. *Id.*, ¶¶ 9–10. Clark subsequently

2

commenced this action, in which he alleges that Trans Union's conduct violated the "report preparation" and "reverification" provisions of the Fair Credit Reporting Act (the "Act"). *Id.*, ¶¶ 13–22.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires a plaintiff's complaint to include, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a pleading fails to meet this standard, it may be subject to dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such dismissal is appropriate only "when a plaintiff fails to allege facts sufficient 'to raise a right to relief above the speculative level' or fails to 'state a claim to relief that is plausible on its face.'" *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56; 570 (2007)). "A district court may properly dismiss a complaint if it rests only on 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.'" *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

To decide whether a plaintiff has sufficiently pleaded his complaint to withstand dismissal under Rule 12(b)(6), courts rely on a two-step process. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 679 (2009). First, the court must identify and disregard conclusory allegations that are "not entitled to the assumption of truth." *Id.* After doing so, the court assumes any remaining factual allegations are true and determines whether those allegations plausibly suggest the plaintiff is entitled to relief. *Id.*

The court must draw all reasonable inferences in favor of the nonmovant, *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1043 (11th Cir. 2019), and the Eleventh Circuit "and the Supreme Court have stated that *pro se* complaints are given more leeway than complaints submitted by litigants represented by lawyers." *Dean v. Barber*, 951 F.2d 1210, 1213 (11th Cir. 1992) (citations omitted).

## DISCUSSION

Clark has brought both of his claims against Trans Union pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, (doc. 1, ¶ 1), which Congress enacted "to ensure fair and accurate consumer reporting, promote efficiency in the banking system, and protect consumer privacy," *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). *See also* 15 U.S.C. § 1681(b) (the purpose of the Act is to ensure that consumer reporting agencies act "in a manner which is fair and equitable" to consumers). To accomplish these goals, the Act establishes a comprehensive set of mandatory guidelines that require consumer reporting agencies—such as Trans

Union—to "use reasonable procedures for collecting, using, and disseminating information" about consumers' credit. *Yelder v. Credit Bureau of Montgomery, LLC*, 131 F. Supp. 2d 1275, 1280 (M.D. Ala. 2001). Put differently, the Act is a varied bundle of rules and regulations designed to ensure that consumer reporting agencies are good stewards of sensitive credit information.

As relevant to Clark's Complaint, the Act establishes specific requirements for how consumer reporting agencies prepare credit reports, 15 U.S.C. § 1681e(b), and respond to a consumer's dispute of the accuracy of his or her report, 15 U.S.C. § 1681i. The Act only requires that consumer reporting agencies act *reasonably* and, therefore, it does not hold such agencies strictly liable for any inaccuracies in a credit report. *E.g.*, *Williams v. First Advantage LNS Screening Sols., Inc.*, 947 F.3d 735, 745 (11th Cir. 2020) (citations omitted); *Garrett v. Experian Info. Sols., Inc.*, 785 F. Supp. 3d 1077, 1082 (N.D. Fla. 2025). Instead, the Act only "creates a private right of action for negligent [15 U.S.C. § 1681o] or willful [15 U.S.C. § 1681n]" failure to comply with any of its requirements of reasonable conduct. *Williams*, 947 F.3d at 745.

In *Safeco*, the Supreme Court held that "willfulness" under the Fair Credit Reporting Act means conduct that is either knowing or reckless. 551 U.S. at 52. *See also Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) (same). As this court has recognized, "[r]ecklessness means conduct violating an

objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Barwick v. Regions Bank*, No. 7:22-cv-1481, 2024 WL 1608744, at *5 (N.D. Ala. Apr. 12, 2024) (quoting *Safeco*, 551 U.S. at 68) (quotation marks omitted). A consumer reporting agency recklessly—and, therefore, willfully—violates the Act when it acts pursuant to an interpretation of the statutory text that could not find support in the courts because it is not objectively reasonable. *E.g.*, *Younger v. Experian Info. Sols., Inc.*, 817 F. App'x 862, 870 (11th Cir. 2020). The Eleventh Circuit has succinctly summarized the standard for willfulness under the Fair Credit Reporting Act thus:

> To establish a willful violation, [a plaintiff] must show that [the defendant] either knowingly or recklessly violated the FCRA. A credit-reporting agency recklessly violates the Act if it takes an action that is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. A violation isn't willful where a defendant followed an interpretation that could reasonably have found support in the courts.

*Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 947 (11th Cir. 2021) (internal citations and punctuation omitted).

Any failure to comply with the Act that does not amount to willfulness, as outlined above, nonetheless allows a consumer to maintain a private right of action for negligent noncompliance. 15 U.S.C. § 1681o(a). Although such negligence is "less serious" than willful noncompliance, *Santos v. Healthcare Revenue Recovery Grp., LLC*, 90 F.4th 1144, 1154 (11th Cir. 2024) (per curiam)*,* a successful plaintiff

may nonetheless recover actual damages, costs, and attorney's fees, 15 U.S.C. § 1681o(a).

In his Complaint, Clark alleges that Trans Union willfully and/or negligently violated the so-called "report preparation," (15 U.S.C. § 1681e(b)), and "reverification" (15 U.S.C. § 1681i) provisions of the Act. (Doc. 1, ¶ 1). Applying the Act's negligence/willfulness framework to Clark's two claims, there are really four questions before the court: (1) has Clark adequately alleged Trans Union *willfully* violated the *report preparation* provision? (2) has Clark adequately alleged Trans Union *negligently* violated the *report preparation* provision? (3) has Clark adequately alleged that Trans Union *willfully* violated the *reverification* provision? and (4) has Clark adequately alleged Trans Union *negligently* violated the *reverification* provision? As set out at greater length below, the answers are no, no, yes, and yes, respectively.

a.  <u>Count One: The Report Preparation Claim (15 U.S.C. § 1681e(b))</u>

In Count One of his Complaint, Clark alleges that Trans Union negligently and/or willfully violated the report preparation provision of the Act, (doc 1, ¶¶ 13–17), which states:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). Deferring, as it must, to this clear statutory text, *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000), the Eleventh Circuit has held that, to state a report preparation claim under Section 1681e of the Act, a plaintiff must prove three things: (1) the consumer reporting agency's report contained factually inaccurate information; (2) the procedures the agency used in preparing the report were not reasonable; and (3) damages. *Losch*, 995 F.3d at 944; *Barwick*, 2024 WL 1608744, at *7 (restating *Losch* factors for 15 U.S.C. § 1681e liability). In its Motion to Dismiss, Trans Union argues that Clark's report preparation claim in Count One fails because he has not sufficiently alleged the first *Losch* element—a factual inaccuracy in the report—but the court disagrees. After careful review of Clark's Complaint and relevant authority, the court finds that Clark has sufficiently alleged that the credit report prepared and distributed by Trans Union contained a factual inaccuracy; however, Clark's report preparation claim is nonetheless due to be dismissed because he has not sufficiently alleged the second *Losch* element: unreasonable action by Trans Union in the course of preparing the inaccurate report.

     i.    Clark's Complaint Alleges Inaccuracy in His Credit Report Sufficient to Support a Report Preparation Claim

In its Motion to Dismiss, Trans Union argues that Count One of Clark's Complaint—the report preparation claim—is due to be dismissed because he has "not plausibly allege[d] how or why the [credit report] is somehow inaccurate," (doc. 6 at 7), and has therefore failed to allege the first of the required *Losch* elements.

The court disagrees and finds that Clark has cleared the standard for allegations of inaccuracy in the credit report because he alleges that his credit report contained an assertion that was objectively and demonstrably not true.

Consistent with the Act's prohibition on strict liability, *Williams*, 947 F.3d at 745, it "does not require error free consumer reports," *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 646 (S.D. Ala. 2007), only that consumer reporting agencies follow reasonable steps to ensure that such reports have "maximum possible accuracy," 15 U.S.C. § 1681e(b). The Eleventh Circuit and this court's own precedent hold that a consumer reporting agency fails to meet this standard—and therefore allows a report-preparation plaintiff to satisfy the inaccuracy requirement—if it prepares a credit report that makes a representation about a consumer's credit that is objectively and demonstrably false. The Eleventh Circuit has held that reports must be "factually correct and free from potential misunderstanding." *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1248 (11th Cir. 2020). A report is not factually correct under this standard when "the information in dispute is 'objectively and readily verifiable'" as false. *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024) (citations omitted). *See also id.* at 1368 (alleged inaccuracy could not support a report preparation claim because it was "not objectively and readily verifiable because it stem[med] from a contractual dispute" lacking a straightforward answer). The hallmark of an inaccuracy that is actionable

under the Act is *objectivity* because accuracy "means freedom from mistake or error. And being free from mistake or error means . . . not deviating from truth." *Id.* at 1367 (quoting *Erickson*, 981 F.3d at 1251–52) (internal quotation marks omitted). A plaintiff can satisfy this standard by alleging "*what information* is inaccurate and *why* it is inaccurate." *Bell v. TransUnion LLC*, No. 6:22-cv-336, 2022 WL 3756918, at *2 (N.D. Ala. Aug. 30, 2022) (emphasis added).

*Barwick v. Regions Bank*, No. 7:22-cv-1481, 2024 WL 1608744 (N.D. Ala. Apr. 12, 2024), typifies the proper application of this standard. In that case, Plaintiff Christopher Barwick fully paid and closed a mortgage on August 1, 2017, yet a report on his credit produced by Defendant Equifax showed late payments on that same mortgage in 2020 and 2021. *Id.* at *1. When the matter came before this court, there was no dispute from the parties—or the court itself—that the report included a factual inaccuracy sufficient to support a report preparation claim under the Act because it asserted that the plaintiff owed a nonexistent financial obligation, *see id.* at *8, i.e., a representation that was "objectively and readily verifiable" as false, *Holden*, 98 F.4th at 1369.

In his Complaint, Clark has easily cleared this standard. Trans Union is correct that the Act "requires a plaintiff to identify the specific inaccurate or incomplete information alleged, including how and why the information was inaccurate," (doc. 6 at 7), and this is exactly what Clark has done: he specifically identified the entry

on his credit report concerning Credit Collection Services as inaccurate, (doc. 1, ¶ 8), "erroneous," and a debt that he "does not owe," *Id.*, ¶ 9. He variously calls this specific entry an "inaccurate collection account," *Id.*, ¶ 10, and "inaccurate information," *Id.*, ¶ 11, for the specific reason that he "has never conducted business" with an entity by that name, *Id.*, ¶ 8, and "has no record of" it, *Id.*, ¶ 9. Like the plaintiff in *Barwick*, Clark's essential claim is that the credit report provided by Trans Union suggested to the prospective creditor that he owed a debt that, in actuality, did not exist. Clark is not relying on vague and conclusory allegations that the credit report was inaccurate in some unspecified way but, rather, has clearly identified "what information is inaccurate and why it is inaccurate." *Bell*, 2022 WL 3756918, at *2. He explains the information in the credit report that is not "factually correct," *Erickson*, 981 F.3d at 1248, and why it "deviat[es] from truth or accuracy" in an objectively verifiable way, *Holden*, 98 F.4th at 1367. Therefore, Clark has sufficiently alleged an inaccuracy in his credit report to support his report preparation claim in Count One.

Trans Union, after correctly noting that the Act requires a demonstration of "inaccuracy as a threshold matter," (doc. 6 at 6), argues that Clark has not adequately pleaded any such inaccuracy in his Complaint because "case law has noted that consumers will often have no direct dealings with a collections agency retained to collect a debt," *Id.* at 3. Trans Union's argument thus amounts to a suggestion that

Clark's credit report *might* accurately reflect a debt he *does* owe that was turned over to a collection agency he does *not know*. This argument improperly asks the court to speculate on what information might come to light during the discovery process when the only pertinent question at this juncture is whether Clark's Complaint—as a specific pleading in and of itself—adequately alleges inaccuracy under the Act. *Jacob*, 40 F.4th at 1334. For all the reasons set forth above, it does, because, as Clark points out in opposition to Trans Union's Motion, his report preparation claim "alleges specific facts supporting a plausible inaccuracy" that "are not conclusory statements but factual allegations that, taken as true, allow the Court to infer the account is inaccurate or misleading under the FCRA." (Doc. 11 at 3).

Moreover, Trans Union's only support for its argument is a single cite to *Rawls v. Convergent Outsourcing, Inc.*, No. 1:23-cv-5465, 2024 WL 3833854 (N.D. Ga. July 25, 2024), a case that is not binding on this court, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation omitted) (decisions of one federal district court are not binding on others, even within the same circuit). Even if this court were bound to follow *Rawls*, that case is too distinguishable to support Trans Union's argument for dismissal of Clark's report preparation claim. Trans Union cites *Rawls* for the proposition that "it will frequently be the case that a consumer will have had no direct dealings with a collection agency retained to collect a debt on behalf of a creditor." (Doc. 6 at 7 (quoting *Rawls*, 2024 WL 3833854, at *4)). As stressed above,

the sole pertinent question for this court is whether Clark's Complaint, as a finite pleading in and of itself, adequately alleges a report preparation claim, whereas *Rawls* merely makes a general observation about the nature of collections while discussing a different provision of the Act, *Rawls*, 2024 WL 3833854, at *4 (interpreting 15 U.S.C. § 1681b(f), which Clark has not alleged as a basis for liability). As Clark correctly states, his "Complaint goes beyond mere unfamiliarity: [he] alleges he does not owe the debt at all, has no record of any underlying obligation, and the reporting is factually erroneous." (Doc. 11 at 3). Trans Union's response to Clark's opposition does nothing to rebut this and simply doubles down on its reliance on *Rawls*.[2] (Doc. 12 at 3–4). It does not matter what "will frequently be the case" for the vast array of other debtors and collection agencies because all that matters is that Clark, specifically, has adequately alleged an objectively verifiable inaccuracy in his credit report, which is sufficient to support a report preparation claim.

In sum, because Clark alleges that his credit report was inaccurate in an objectively verifiable way, he has sufficiently alleged the inaccuracy that is required for a report preparation claim under the Fair Credit Reporting Act.

---

[2] Because Clark's Complaint alleges that the debt to Credit Collection Services never existed, (doc. 1, ¶¶ 8–12), his continued references to that allegation in opposing Trans Union's Motion are not an attempt to "supplement[] his existing complaint in response to a motion to dismiss," (Doc. 12 at 2).

ii.    Clark's Complaint Does Not Sufficiently Allege Unreasonable Action by Trans Union to Support a Report Preparation Claim

As stressed above, Trans Union's argument for dismissal of Clark's report preparation claim in Count One must fail because he has adequately alleged that the report included an actionable inaccuracy. However, after careful review of Clark's Complaint, the court nonetheless finds that Clark's report preparation claim is due to be dismissed because Clark has not alleged that the inaccuracy was included in the report as a result of Trans Union's unreasonable procedures.

To reiterate, the provision of the Act upon which Clark bases Count One allows for liability if a consumer reporting agency negligently or willfully fails to "follow reasonable procedures to assure maximum possible accuracy of the information" in a credit report. 15 U.S.C. § 1681e(b). Deferring to this plain language, the Eleventh Circuit has held that an essential element of a report preparation claim is that "the procedures [the reporting agency] took in preparing and distributing the report weren't reasonable." *Losch*, 995 F.3d at 944. Because the Act does not permit strict liability based solely on an inaccurate report, *Williams*, 947 F.3d at 745, a consumer has not stated a valid report preparation claim if he merely challenges the *contents* of the final report without challenging the *reasonableness of the procedures* that produced the report. *See e.g.*, *Barwick*, 2024 WL 1608744, at *7.

In *Losch*, the Eleventh Circuit adopted the following principles for assessing the reasonableness of a reporting agency's preparation of a report:

> **[A] reporting agency's procedures [in preparing a credit report] will not be deemed unreasonable unless the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable.** *See Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004). Because lenders report many millions of accounts to [consumer reporting agencies] daily, requiring [them] to examine each report individually for errors would be unduly costly. *Id.* But on the flip side of the same coin, when a consumer reporting agency . . . has been notified of potentially inaccurate information in a consumer's credit report[,] [it] is in a very different position than one who has no such notice. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286–87 (7th Cir. 1994). That's because once a claimed inaccuracy is pinpointed, a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

*Losch*, 995 F.3d at 945 (emphasis added and internal quotation marks omitted).

Even deferring to Clark's *pro se* status, *Dean*, 951 F.2d at 1213, he has failed to adequately plead his report preparation claim in Count One to meet this standard. As *Losch* and the plain text of the Act make clear, a viable report preparation claim requires unreasonable conduct by the consumer reporting agency in the course of preparing the report and cannot be supported by a mere inaccuracy in the final product. *Id.* It logically follows that, when a plaintiff fails to make *any* factual allegations about the process by which the report was prepared—as Clark has—he has failed to state a claim on which relief can be granted because he has not offered *any* procedures by the reporting agency that the court could find to be unreasonable.

This is fatal to Clark's report preparation claim in Count One because he alleges nothing about the processes and procedures by which Trans Union prepared the report at issue, (*see generally* doc. 1), and he improperly "relies principally on the outcome," *Garrett*, 785 F. Supp. 3d at 1082.

In his Complaint, Clark only makes specific factual allegations about his credit report *after* Trans Union had prepared, finalized, and distributed it to the prospective creditor. (Doc. 1, ¶¶ 8–9; 11). He does not allege that Trans Union had "a reason to believe that the information supplied to it by a data furnisher [was] unreliable," *Losch*, 995 F.3d at 945, or that it had "been notified of potentially inaccurate information in [the] consumer's credit report," *Id.* (quoting *Henson*, 29 F.3d at 286–87). Even accepting all of the factual allegations in the Complaint as true, it is still possible that Trans Union acted reasonably and included an inaccuracy in the report by good-faith accident because "even reasonable procedures will not prevent all credit-reporting errors." *Garrett*, 785 F. Supp. 3d at 1082. Clark's failure to plead any factual allegations about the process by which Trans Union prepared the credit report precludes a viable report preparation claim, *Losch*, 995 F.3d at 945, and is an impermissible attempt at strict liability based solely on an inaccurate credit report, which is not allowed under the Act, *Williams*, 947 F.3d at 745.

In sum, Count One of Clark's Complaint—the Fair Credit Reporting Act report preparation claim—is due to be dismissed because, although he has

adequately alleged that his credit report was inaccurate, he has not sufficiently alleged that such inaccuracy was the result of Trans Union's unreasonable procedures in preparing the report. *See Losch*, 995 F.3d at 944. Accordingly, Trans Union's Motion to Dismiss is due to be **GRANTED** as to Count One.

  b. <u>Count Two: The Reverification Claim (15 U.S.C. § 1681i)</u>

  In Count Two of his Complaint, Clark alleges that Trans Union violated the "reverification" provision of the Act by failing to conduct a reasonable investigation after he disputed the inaccurate credit report. (Doc. 1, ¶¶ 18–22). As relevant to Count Two, the Act requires that

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.

15 U.S.C. § 1681i(a)(1)(A). The reinvestigation provision of the Act also provides that a consumer reporting agency "shall provide to a consumer in writing . . . a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer." 15 U.S.C. § 1681i(a)(6)(B)(iii). The reporting agency "shall provide [the verification information] . . . not later than 15 days after receiving a request from the consumer for that description." 15 U.S.C. § 1681i(a)(7).

In his Complaint, Clark has sufficiently alleged that Trans Union violated the Act's reverification provision by its failure to provide the information on its procedures to Clark upon his request. Clark specifically alleges that he "promptly disputed the inaccurate collection account with Trans Union, requesting an Automated Consumer Dispute Verification (ACDV) record *and details of Trans Union's method of verification.*" (Doc. 1, ¶ 11 (emphasis added)). Rather than providing the information, or a notice that it would do so—as the Act requires— Clark alleges that Trans Union "responded by stating the information was 'verified,' *without providing substantive evidence.*" *Id.* (emphasis added). In its Motion to Dismiss, Trans Union argues that Clark's reverification claim is insufficient as a matter of law because consumer reporting agencies are not required to disclose Automated Consumer Dispute Verification forms, (doc. 6 at 8), but this has no bearing on the fact that the Complaint alleges that Trans Union simply failed to provide the "description of the procedure used to determine the accuracy and completeness" of the report, as it was required to do upon Clark's request, 15 U.S.C. § 1681i(a)(6)(B)(iii).

Thus, Clark has alleged that Trans Union negligently failed to comply with the reverification requirements of the Act by its failure to share its verification methods with him upon request. 15 U.S.C. § 1681i(a)(7). Beyond negligence, Clark has sufficiently alleged that Trans Union's actions rise to the level of willfulness

because blatant noncompliance with a mandatory provision of the Act is "a violation under a reasonable reading of the statute's terms, [and] shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Losch*, 995 F.3d at 947 (quoting *Safeco*, 551 U.S. at 69). Accepting Trans Union's allegations as true, Clark has alleged that its actions were willful because overt failure to adhere to mandatory statutory duties is "reckless disregard for the law," *Harris*, 564 F.3d at 1310, and "conduct which amounts to an 'objectively unreasonable' view of the company's duties under the statute," *Younger*, 817 F. App'x at 870. Such conduct obviously "could [not] reasonably have found support in the courts," *Losch*, 995 F.3d at 947, and, therefore, constitutes an adequate allegation of willfulness under the Fair Credit Reporting Act.

In its Motion, Trans Union argues that Clark has failed to sufficiently allege that it acted willfully because he relies on "vague, conclusory assumption" rather than identifying "conduct that is clearly unlawful under then-existing law," (doc. 6 at 9–10), but this is not true. As explained above, Clark alleges that Trans Union failed to adhere to a mandatory statutory command to provide him with the information he requested under its explicit textual authorization. This is not a case where Clark alleges that Trans Union took some action that existing law might have led it to believe was acceptable, but, rather, an allegation that it simply failed to perform its mandatory duty. Trans Union is correct that consumer reporting agencies

are not liable as long as their actions were based on an objectively reasonable reading of the statute, (doc. 6 at 10), but it cites no authority for the proposition that simply disregarding such mandatory language was a reasonable interpretation.

In sum, because Clark alleges that Trans Union failed to provide him with the information on its reverification procedures to which he had a clear statutory right, he has sufficiently alleged both a negligent and a willful violation of the reverification provision of the Fair Credit Reporting Act. Accordingly, Trans Union's Motion to Dismiss is due to be **DENIED** as to Count Two.

## CONCLUSION

In his Complaint, Plaintiff Uthman Idrees Ali Clark alleges that Defendant Trans Union, LLC, violated the report preparation and reverification provisions of the Fair Credit Reporting Act. Trans Union's Motion to Dismiss is due to be **GRANTED** as to Count One because Clark has failed to allege that Trans Union's procedures in preparing the credit report were unreasonable. Trans Union's Motion to Dismiss is due to be **DENIED** as to Count Two because Clark has adequately alleged that it willfully and negligently violated the reverification provision of the Act.

The Clerk of Court is **DIRECTED** to mail a copy of this Memorandum Opinion to Plaintiff at his address on file. The stay in this case is hereby **LIFTED** and the parties are **ORDERED** to file their Rule 26(f) report within thirty (30) days.

**DONE** and **ORDERED** on December 16, 2025.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE